**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| DOMINIC DEBELLO, | ) | No. EDCV 09-444 CW |
| | ) | |
| Plaintiff, | ) | DECISION AND ORDER |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned Magistrate Judge. Plaintiff seeks review of the Commissioner's denial of disability benefits. As discussed below, the court finds that the Commissioner's decision should be reversed and this matter remanded for further proceedings.

**I.   BACKGROUND**

Plaintiff Dominic Debello was born on October 9, 1959, and was forty-seven years old on the date he last met the insured status requirements of the Social Security Act. [Administrative Record ("AR") 7, 117.] Plaintiff has a high school education and past relevant work

experience as a plumber, heating and air conditioning. [AR 14.] Plaintiff alleges disability on the basis of herniated and bulging discs in his lower back. [AR 52.]

## II. PROCEEDINGS IN THIS COURT

Plaintiff's complaint was lodged on February 27, 2009, and filed on March 6, 2009. On August 7, 2009, Defendant filed an Answer and Plaintiff's Administrative Record ("AR"). On October 20, 2009, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party. This matter has been taken under submission without oral argument.

## III. PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for a period of disability and disability insurance benefits ("DIB") on October 31, 2006, alleging disability since May 31, 2004. [AR 7.] Plaintiff's date last insured for DIB eligibility is September 30, 2007. [Id.] After the application was denied initially and on reconsideration, Plaintiff requested an administrative hearing, which was held on August 15, 2008, before Administrative Law Judge ("ALJ") Lowell Fortune. [AR 21.] Plaintiff appeared with counsel, and testimony was taken from Plaintiff, medical expert Samuel Landau, and vocational expert Sandra Fioretti. [AR 22.] The ALJ denied benefits in a decision issued on September 16, 2008. [AR 7-16.] When the Appeals Council denied review on February 4, 2009, the ALJ's decision became the Commissioner's final decision. [AR 1-3.]

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's (or

ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence. However, if the court determines that a finding is based on legal error or is not supported by substantial evidence in the record, the court may reject the finding and set aside the decision to deny benefits. See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id. "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

## V. DISCUSSION

### A. THE FIVE-STEP EVALUATION

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at

721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920.  If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps.  Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel.  Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288.  If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to

prove that, considering residual functional capacity ("RFC")[1], age, education, and work experience, a claimant can perform other work which is available in significant numbers. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

**B.  THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

Here, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period from his alleged disability onset date (May 31, 2004) to the date last insured (September 30, 2007) (step one); that plaintiff had "severe" impairments, namely morbid obesity and a lumbar spine disorder (step two); and that plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three). [AR 9.] The ALJ determined that Plaintiff had an RFC for a limited range of light work, including the ability to lift twenty pounds occasionally and ten pounds frequently; stand and walk for one to three blocks at a time for two hours out of an eight-hour workday; sit for six hours in an eight-hour workday; have the option to sit/stand every two hours for up to three minutes so he can stand and stretch; occasionally climb ramps and stairs; restricted from climbing ladders, ropes and scaffolds; occasionally bend and stoop; restricted from crouching or kneeling; walk with an assistive device as needed to walk on uneven terrain if he is walking more than two blocks; restricted from work at unprotected heights;

---

[1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989). Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations. Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c). Pain may be either an exertional or a nonexertional limitation. Penny, 2 F.3d at 959; Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

work in an air-conditioned workplace. [AR 10.]  This RFC precluded Plaintiff from returning to his past relevant work (step four). [AR 14.]  The vocational expert testified that a person with Plaintiff's RFC could perform other jobs in the national economy, such as bench assembler, assembler of buttons and notions, and optical assembler (step five). [AR 15.]  Accordingly, Plaintiff was found not "disabled" as defined by the Social Security Act. [Id.]

**C.   ISSUES IN DISPUTE**

The parties' Joint Stipulation raises four disputed issues:

1. Whether the ALJ properly considered Plaintiff's morbid obesity;
2. Whether the ALJ properly considered the opinions of Plaintiff's treating physician;
3. Whether the ALJ properly developed the record; and
4. Whether the ALJ properly considered Plaintiff's medication side effects.

[JS 2-3.]

As discussed below, Issue Three is dispositive.

**D.   DR. TYLEE**

In Issue Three, Plaintiff contends that the ALJ did not properly develop the record as to the opinion of his treating physician, Dr. Lafayette Tylee. [JS 16-18.]

**Background**

The record indicates that Plaintiff stated that his symptoms began in approximately 1999, and that his symptoms worsened so that he stopped working as a plumber in 2001. [AR: Exh. 4F at 1.]  The pain was predominately in the thoracolumbar area and "has been quite debilitating." [Id.]  Plaintiff alleges a disability onset date of

6

May 31, 2004.

On July 12, 2007, Dr. Tylee completed a Physical Capacities Evaluation for Plaintiff that stated a diagnosis of low back pain and degenerative disc disease. [AR: Exh. 7F.] Dr. Tylee's responses to the questionnaire stated, among other things, that Plaintiff should be limited to two hours of sitting, two hours of standing, and one hour of walking at one time during an eight-hour workday; three total hours of sitting, four total hours of standing, and two total hours of walking in an eight-hour workday; that Plaintiff can occasionally lift and carry ten pounds; that Plaintiff's signs and symptoms included substance dependence, impaired sleep, depression, anxiety, difficulty thinking or concentrating, and emotional withdrawal or isolation; and that the impairment lasted or could be expected to last for at least twelve months. [Id.]

On July 31, 2007, Dr. Tylee completed a Physical Residual Functional Capacity ["PRFC"] Questionnaire. [AR: Exh. 10F.] Dr. Tylee stated that Plaintiff's first date of treatment was on January 10, 2007, that the most recent treatment occurred on July 12, 2007, and that treatment occurred monthly. [Id. at 1.] Dr. Tylee estimated that Plaintiff's level of pain was "7-9" on a scale of zero to ten. [Id.] Dr. Tyree stated that Plaintiff should be limited to three hours of sitting and three hours of standing/walking in an eight-hour workday, and that Plaintiff should be limited to lifting, at most, five to ten pounds occasionally. [Id. at 2.] In the comments section of the questionnaire, Dr. Tylee wrote, in part, that Plaintiff "has chronic moderate to severe pain (low back) over a very long time (>10 years) and is currently dependent and a chronic user of anxiety and narcotic medications which contribute to his suboptimal functioning." [Id. at

5.]

On October 10, 2007, Dr. Tylee completed another PRFC Questionnaire. [AR 68-72.] Dr. Tylee stated that Plaintiff's first date of treatment was on January 10, 2007, that the most recent treatment occurred on October 9, 2007, and that treatment occurred monthly. [AR 68.] Dr. Tylee estimated that Plaintiff's level of pain was "7-9" on a scale of zero to ten, and that his level of fatigue was seven. [Id.] Dr. Tyree gave the same postural and lifting limitations as the prior questionnaire. [AR 69.] In the comments section of the questionnaire, Dr. Tylee reiterated Plaintiff's lower back problems and stated, in part, that Plaintiff "is coming to our clinic for pain management, but his inability to function physically, emotionally and cognitively has made him disabled at this time." [AR 72.]

### The Commissioner's Evaluation

In the administrative decision, the ALJ decided not to attach "great weight" to the two evaluations completed by Dr. Tyree in July 2007. The ALJ did not address the October 10, 2007 questionnaire. The ALJ cited several reasons to reject the July 2007 opinions, including, in pertinent part, that no treatment notes were attached to the opinions, and that the opinions were not supported by any other treatment notes in the file. [AR 13.] Plaintiff contends that, in light of the fact that the record indicates that Dr. Tyree had a prior treatment relationship with Plaintiff, the ALJ should have made "reasonable attempts to obtain missing medical records from Dr. Tylee" before rejecting his opinions. [JS 17.]

### Discussion

The ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered

. . . even when the claimant is represented by counsel." <u>Celaya v. Halter</u>, 332 F.3d 1177, 1183 (9th Cir. 2003)(ellipsis in original) (quoting <u>Brown v. Heckler</u>, 713 F.2d 441, 443 (9th Cir.1983); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1288 (9th Cir. 1996); <u>see also</u> <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1069 (9th Cir. 2006)(ALJ has a duty to develop the record where there is a "gap" in the medical evidence). This duty requires, among other things, that the ALJ "make every reasonable effort to obtain from the individual's treating physician . . . all medical evidence, including diagnostic tests, necessary in order to properly make [a disability] determination, prior to evaluating medical evidence obtained from any other source on a consultative basis." 42 U.S.C. § 423(d)(5)(B); <u>see also</u> 20 C.F.R. § 404.1512(d)(1).

In this case, because it was evident that Plaintiff's existing record did not contain treating medical evidence referenced elsewhere in the record, the ALJ should have made additional reasonable efforts to develop the evidence. The two PRFC questionnaires completed by Dr. Tylee indicate that there was an earlier treatment relationship dating back to January 10, 2007, yet the record does not contain any treatment records from Dr. Tylee. Defendant cites a record indicating that the Commissioner made an initial request for treatment records from Dr. Tylee's clinic in Victorville, but it appears that the request was returned undelivered, and it did not cover the later stages of treatment; this does not appear to be, based on the existing record, a "reasonable effort" to develop the evidence pursuant to the Commissioner's regulations. [JS 19; AR 19-20.] <u>See</u> 20 C.F.R. § 404.1512(d)(1) ("'Every reasonable effort' means that we will make an initial request for evidence from your medical source and, at any time

between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one followup request to obtain the medical evidence necessary to make a determination").

Defendant further argues that Plaintiff and his counsel had several opportunities to submit evidence from Dr. Tylee, and the record indicates that they did not make a reasonable effort to do so. [JS 19-20.] Although Defendant's apparent argument that the claimant shares in the burden of developing the record is well-taken, see 20 C.F.R. § 404.1512(c), it is also well-settled that the Commissioner is not a "mere umpire" in the proceeding and has a special duty to develop the record fully and fairly to assure that the claimant's interests are considered. See Widmark v. Barnhart, 454 F.3d at 1068. Based on the circumstances of this case, particularly the clear indications that the record is incomplete, remand for further development of the record is appropriate.

### E. REMAND FOR FURTHER PROCEEDINGS

The decision whether to remand for further proceedings is within the discretion of the district court. Harman v. Apfel, 211 F.3d 1172, 1175-1178 (9th Cir. 2000). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Harman, 211 F.3d at 1179 (decision whether to remand for further proceedings turns upon their likely utility). However, where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. Id. Here, as set out above, outstanding issues remain before a finding of

disability can be made.[2]  Accordingly, remand is appropriate.

## VI. ORDERS

Accordingly, **IT IS ORDERED** that:

1. The decision of the Commissioner is **REVERSED**.

2. This action is **REMANDED** to defendant, pursuant to Sentence Four of 42 U.S.C. § 405(g), for further proceedings as discussed above.

3. The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.

DATED: November 30, 2009

```
                    _____/S/_____
                         CARLA M. WOEHRLE
                    United States Magistrate Judge
```

---

[2] None of the remaining claims raised by Plaintiff in the Joint Stipulation clearly directs a finding of disability on the basis of the current record.